Mark T. Flewelling (Bar No. 96465)
   mflewelling@lagerlof.com
Michael Rapkine (Bar No. 222811)
   mrapkine@lagerlof.com
LAGERLOF, LLP
155 North Lake Avenue, 11th Floor
Pasadena, California 91101
Telephone: (626) 793-9400
Facsimile: (626) 793-5900

Attorneys for Plaintiff
WELLS FARGO BANK, N.A.
a national banking association
("Wells Fargo")

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WELLS FARGO BANK, N.A., a national banking association,<br><br>Plaintiff,<br><br>v.<br><br>STEWART HOMES, INC., a California corporation, dba 5 Star Homes; CAPITAL (360), INC., a California corporation; DAVID M. TOFOLO, an individual; AMY S. STEWART, an individual; AMY S. STEWART, as trustee of the Stewart Family Trust Dated December 6, 2020; FRANK ARLASKY, an individual; SANDRA FERN WHITE, an individual; and DOES 1-10, inclusive,<br><br>Defendants. | Case No.:  8:23-cv-01800-DOC-ADS<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**<br><br>1. Breach of Written Contract<br>2. Right to Refund Under Cal. Commercial Code Section 4-214<br>3. Money Had and Received<br>4. Money Paid<br>5. Money Had and Received<br>6. Money Paid<br>7. Conversion<br>8. Violation of Cal. Penal Code Section 496 (Theft)<br>9. Unfair Business Practices<br>10. Declaratory Relief<br>11. Fraudulent Transfer<br>12. Fraudulent Transfer |

Plaintiff Wells Fargo Bank, N.A. ("Wells Fargo") alleges:

1.    This action arises from a check kiting scheme initiated by the Chief Executive Officer of Stewart Homes Inc., Michael Stewart, who is deceased.  The Defendants named in this action were complicit in the check kiting scheme or received ill-gotten gains as a result of the scheme.  Wells Fargo, which sustained a loss of not less than $1,407,126.03 as a result of the scheme, seeks to recover its loss, treble damages, as well as declaratory and other equitable relief.

## PARTIES

2.    Plaintiff Wells Fargo is, and at all times mentioned in this complaint was, a national banking association with its main office located in Sioux Falls, South Dakota.  It is authorized to do business, and does business, in California. Wells Fargo is a citizen of South Dakota for diversity purposes.

3.    Defendant Stewart Homes, Inc., dba 5 Star Homes ("Stewart Homes"), is a California corporation that, on information and belief, is headquartered in Stanton, California and authorized to do business in California. It is a citizen of California for diversity purposes.  Stewart Homes was run by its CEO, Michael P. Stewart, who was the alter ego of Stewart Homes.  Mr. Stewart passed away on or around July 15, 2023.

4.    Defendant Capital (360), Inc. ("Capital") is a California corporation that, on information and belief, is headquartered in Dana Point, California, and is authorized to do business in California.  It is a citizen of California for diversity purposes.

5.    Defendant Frank Arlasky ("Arlasky") is an individual who, on information and belief, is the sole owner, President, and CEO of Capital.  Mr. Arlasky resides in Dana Point, California, with the intention of remaining there indefinitely.

6.    Defendant Sandra Fern White ("White") is an individual who, on information and belief, is married to defendant Arlasky.  Ms. White resides in Dana

Point in the same real property as Arlasky, with the intention of remaining there indefinitely.

7.     Defendant David M. Tofolo ("Tofolo") is an individual who, on information and belief, is an investor in Stewart Homes and resides in Laguna Niguel, California, with the intention of remaining there indefinitely.

8.     Defendant Amy S. Stewart ("Stewart") is, on information and belief, the successor trustee of the Stewart Family Trust dated December 6, 2020 (the "Stewart Family Trust"), which is the sole shareholder of Stewart Homes.  Ms. Stewart is named in this action in her individual capacity and in her capacity as trustee of the Stewart Family Trust.  Amy Stewart resides in San Juan Capistrano, California, with the intention of remaining there indefinitely.

9.     If new facts come to the attention of Wells Fargo, it will amend this Complaint accordingly.

10.     On information and belief, Wells Fargo alleges that each of the Defendants was an agent, partner, employee, or joint venturer of other Defendants and acting within the course and scope of such agency, employment, joint venture, or partnership.

11.     On information and belief, Wells Fargo alleges that Defendant Stewart Homes failed to observe corporate formalities pursuant to California law, including without limitation commingling corporate assets with the assets of Michael Stewart and the Stewart Family Trust.  There is a unity of interest and ownership such that the interests of Stewart Homes and the Stewart Family Trust are not separate and distinct. Defendant Stewart Homes is therefore the alter ego of the Stewart Family Trust, and they are both liable, jointly and severally, for various claims alleged below.  Stewart Homes was involved in many illegal activities, including but not limited to check kiting and perpetrating a Ponzi scheme.

12.     On information and belief, Wells Fargo alleges that Defendant Capital failed to observe corporate formalities pursuant to California law, including without

limitation commingling corporate assets with the assets of Defendant Frank Arlasky and his wife, Sandra Fern White. There is a unity of interest and ownership such that the interests of Capital, Frank Arlasky, and Sandra Fern White are not separate and distinct. Defendants Arlasky and White are therefore the alter egos of Capital, and they are all liable, jointly and severally, for various claims alleged below. For the debt that Arlasky is liable, White is also liable under California's community property laws.

## JURISDICTION AND VENUE

13. This Court has jurisdiction pursuant to 28 U.S.C. § 1332. The citizenship of the parties is completely diverse and the amount in controversy exceeds $75,000.

14. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, as one or more Defendants reside in Orange County and most, if not all, of the events giving rise to this action arose in the Central District of California.

## GENERAL ALLEGATIONS GIVING RISE TO THE CHECK KITING SCHEME

15. On October 29, 2018, Defendant Capital opened a Wells Fargo business checking account ending in #.... 5167 (the "Capital Account"). To open the Capital Account, Capital's Chief Executive Officer Frank Arlasky executed an account application, representing that he was the sole owner of Capital. A true and correct copy of the application (the "Capital Application") is attached to the Complaint as Exhibit 1. As with certain exhibits to the Complaint, portions of Exhibit 1 have been partially redacted to protect the privacy rights of the Defendants.

16. In the Capital Application, Defendant Capital acknowledged receipt of, and agreed to be bound by, the terms and conditions of the applicable deposit account agreement when the account was opened, and by all modifications to that agreement.

17. The Capital Account is governed by a Deposit Account Agreement effective November 15, 2022. A true and correct copy of the Deposit Account

Agreement is attached to the Complaint as <u>Exhibit 2</u>.

18.    The Deposit Account Agreement memorializes Wells Fargo's right to charge the Capital Account for unpaid items as well as Capital's obligation to repay Wells Fargo for overdrafts and for any account activity that results in a negative balance in the Capital Account.

19.    In October 2021, there was an internal conversion by Wells Fargo of the account number for the Capital Account.  The number for the Capital Account changed to an account ending in #...5813.

20.    From July 7, 2023 through July 11, 2023, Defendant Stewart Homes drew the following checks on its deposit account at Enterprise Bank & Trust, each made payable to defendant Capital (the "Stewart Checks"):

| CHECKS FROM STEWART HOMES INC TO CAPITAL (360), INC. | | | | | |
|---|---|---|---|---|---|
| Drawn on Enterprise Bank & Trust, Account No. ending in 5360. | | | | | |
| DRAWN BY | CHECK NUMBER | CHECK DATE | DEPOSIT DATE | AMOUNT | RETURNED |
| Stewart Homes, Inc., 5 Star Homes | 32795 | 7/7/2023 | 7/11/2023 | $76,000 | YES (RFM) |
| Stewart Homes, Inc., 5 Star Homes | 32796 | 7/7/2023 | 7/11/2023 | $77,000 | YES (RFM) |
| Stewart Homes, Inc., 5 Star Homes | 32805 | 7/7/2023 | 7/11/2023 | $75,000 | YES (RFM) |
| Stewart Homes, Inc., 5 Star Homes | 32806 | 7/7/2023 | 7/11/2023 | $78,000 | YES (RFM) |
| Stewart Homes, Inc., 5 Star Homes | 32807 | 7/7/2023 | 7/11/2023 | $81,000 | YES (RFM) |
| Stewart Homes, Inc., 5 Star Homes | 32808 | 7/7/2023 | 7/11/2023 | $85,000 | YES (RFM) |
| Stewart Homes, Inc., 5 Star Homes | 32809 | 7/7/2023 | 7/11/2023 | $79,000 | YES (RFM) |
| Stewart Homes, Inc., 5 Star Homes | 32811 | 7/7/2023 | 7/11/2023 | $79,000 | YES (RFM) |
| Stewart Homes, Inc., 5 Star Homes | 32812 | 7/7/2023 | 7/11/2023 | $81,000 | YES (RFM) |
| Stewart Homes, Inc., 5 Star Homes | 32821 | 7/7/2023 | 7/11/2023 | $82,000 | YES (RFM) |
| Stewart Homes, Inc., 5 Star Homes | 32804 | 7/7/2023 | 7/12/2023 | $70,000 | YES (RFM) |

| | Stewart Homes, Inc., 5 Star Homes | 32813 | 7/7/2023 | 7/12/2023 | $85,000 | YES (RFM) |
|---|---|---|---|---|---|---|
| | Stewart Homes, Inc., 5 Star Homes | 32814 | 7/7/2023 | 7/12/2023 | $84,000 | YES (RFM) |
| | Stewart Homes, Inc., 5 Star Homes | 32815 | 7/7/2023 | 7/12/2023 | $75,000 | YES (RFM) |
| | Stewart Homes, Inc., 5 Star Homes | 32816 | 7/7/2023 | 7/12/2023 | $77,000 | YES (RFM) |
| | Stewart Homes, Inc., 5 Star Homes | 32817 | 7/7/2023 | 7/12/2023 | $71,000 | YES (RFM) |
| | Stewart Homes, Inc., 5 Star Homes | 32818 | 7/7/2023 | 7/12/2023 | $76,000 | YES (RFM) |
| | Stewart Homes, Inc., 5 Star Homes | 32820 | 7/7/2023 | 7/12/2023 | $85,000 | YES (RFM) |
| | Stewart Homes, Inc., 5 Star Homes | 32822 | 7/7/2023 | 7/12/2023 | $83,000 | YES (RFM) |
| | Stewart Homes, Inc., 5 Star Homes | 32823 | 7/7/2023 | 7/12/2023 | $81,000 | YES (RFM) |
| | Stewart Homes, Inc., 5 Star Homes | 32824 | 7/7/2023 | 7/12/2023 | $72,000 | YES (RFM) |
| | Stewart Homes, Inc., 5 Star Homes | 33047 | 7/10/2023 | 7/12/2023 | $82,000 | YES (RFM) |
| | Stewart Homes, Inc., 5 Star Homes | 33048 | 7/10/2023 | 7/12/2023 | $79,000 | YES (RFM) |
| | Stewart Homes, Inc., 5 Star Homes | 33192 | 7/11/2023 | 7/13/2023 | $18,000 | YES (NSF) |
| | Stewart Homes, Inc., 5 Star Homes | 32975 | 7/10/2023 | 7/17/2023 | $79,000 | YES (NSF) |
| | Stewart Homes, Inc., 5 Star Homes | 32976 | 7/10/2023 | 7/17/2023 | $80,000 | YES (NSF) |
| | Stewart Homes, Inc., 5 Star Homes | 32977 | 7/10/2023 | 7/17/2023 | $81,000 | YES (NSF) |
| | Stewart Homes, Inc., 5 Star Homes | 32978 | 7/10/2023 | 7/17/2023 | $88,000 | YES (NSF) |
| | Stewart Homes, Inc., 5 Star Homes | 32979 | 7/10/2023 | 7/17/2023 | $87,000 | YES (NSF) |
| | Stewart Homes, Inc., 5 Star Homes | 33177 | 7/10/2023 | 7/17/2023 | $68,000 | YES (RFM) |
| | Stewart Homes, Inc., 5 Star Homes | 33178 | 7/10/2023 | 7/17/2023 | $80,000 | YES (RFM) |
| | Stewart Homes, Inc., 5 Star Homes | 33179 | 7/10/2023 | 7/17/2023 | $81,000 | YES (RFM) |
| | Stewart Homes, Inc., 5 Star Homes | 33180 | 7/10/2023 | 7/17/2023 | $79,000 | YES (RFM) |
| | Stewart Homes, Inc., 5 Star Homes | 33181 | 7/10/2023 | 7/17/2023 | $79,000 | YES (RFM) |
| | **TOTAL** | | | | **$2,633,000** | |

FIRST AMENDED COMPLAINT

{94000/HR2745/00742250-10 }

4888-7264-3996, V. 1

21.     From July 11, 2023, through July 17, 2023, Defendant Capital deposited the Stewart Checks into the Capital Account.

22.     Pursuant to the Deposit Account Agreement and federal law (e.g., the Expedited Funds Availability Act, 12 U.S.C. § 4001, *et seq*., and its implementing regulations, including 12 C.F.R. § 229.12), Wells Fargo provisionally credited to the Capital Account amounts equal to the Stewart Checks.

23.     Immediately after receipt of the Stewart Checks, Defendant Capital drew the following checks back to Stewart Homes using the funds that Wells Fargo had provisionally credited to the Capital Account.

| CHECKS FROM CAPITAL (360) PAID TO STEWART HOMES, INC. | | | | |
|---|---|---|---|---|
| Drawn on Wells Fargo Account No. ending in 5813. | | | | |
| DRAWN BY | CHECK NUMBER | CHECK DATE | DEPOSIT DATE | AMOUNT |
| Capital (360), Inc. | 3101 | 7/10/2023 | 7/11/2023 | $81,000 |
| Capital (360), Inc. | 3102 | 7/10/2023 | 7/11/2023 | $80,000 |
| Capital (360), Inc. | 3109 | 7/10/2023 | 7/11/2023 | $69,000 |
| Capital (360), Inc. | 3114 | 7/10/2023 | 7/11/2023 | $79,000 |
| Capital (360), Inc. | 3117 | 7/10/2023 | 7/11/2023 | $83,000 |
| Capital (360), Inc | 3118 | 7/10/2023 | 7/11/2023 | $79,000 |
| Capital (360), Inc. | 3103 | 7/10/2023 | 7/12/2023 | $83,000 |
| Capital (360), Inc. | 3104 | 7/10/2023 | 7/12/2023 | $79,000 |
| Capital (360), Inc. | 3105 | 7/10/2023 | 7/12/2023 | $74,000 |
| Capital (360), Inc. | 3106 | 7/10/2023 | 7/12/2023 | $69,000 |
| Capital (360), Inc. | 3107 | 7/10/2023 | 7/12/2023 | $75,000 |
| Capital (360), Inc. | 3108 | 7/10/2023 | 7/12/2023 | $73,000 |
| Capital (360), Inc. | 3110 | 7/10/2023 | 7/12/2023 | $70,000 |
| Capital (360), Inc. | 3112 | 7/10/2023 | 7/12/2023 | $82,000 |
| Capital (360), Inc. | 3113 | 7/10/2023 | 7/12/2023 | $83,000 |
| Capital (360), Inc. | 3121 | 7/10/2023 | 7/12/2023 | $68,000 |
| Capital (360), Inc. | 3248 | 7/12/2023 | 7/12/2023 | $80,000 |
| Capital (360), Inc. | 3249 | 7/12/2023 | 7/12/2023 | $77,000 |
| Capital (360), Inc. | 3250 | 7/12/2023 | 7/12/2023 | $78,000 |
| TOTAL | | | | **$1,462,000** |

24.     Stewart Homes then drew the checks in the following table from its Enterprise Bank & Trust account to defendant David Tofolo, which were deposited

on July 11, 2023, into Tofolo's deposit account at Wells Fargo.

| CHECKS FROM STEWART HOMES PAID TO DAVID TOFOLO | | | | |
|---|---|---|---|---|
| Drawn on Enterprise Bank & Trust Account No. ending in 5360. | | | | |
| DRAWN BY | CHECK NUMBER | CHECK DATE | DEPOSIT DATE | AMOUNT |
| Stewart Homes, Inc., 5 Star Homes | 32463 | 7/9/2023 | 7/11/2023 | $69,000 |
| Stewart Homes, Inc., 5 Star Homes | 32464 | 7/9/2023 | 7/11/2023 | $68,000 |
| Stewart Homes, Inc., 5 Star Homes | 32465 | 7/9/2023 | 7/11/2023 | $65,000 |
| Stewart Homes, Inc., 5 Star Homes | 32549 | 7/9/2023 | 7/11/2023 | $65,000 |
| Stewart Homes, Inc., 5 Star Homes | 32836 | 7/9/2023 | 7/11/2023 | $71,000 |
| Stewart Homes, Inc., 5 Star Homes | 32837 | 7/9/2023 | 7/11/2023 | $69,000 |
| Stewart Homes, Inc., 5 Star Homes | 32953 | 7/9/2023 | 7/11/2023 | $64,000 |
| Stewart Homes, Inc., 5 Star Homes | 32954 | 7/9/2023 | 7/11/2023 | $62,000 |
| Stewart Homes, Inc., 5 Star Homes | 32984 | 7/9/2023 | 7/11/2023 | $90,000 |
| Stewart Homes, Inc., 5 Star Homes | 33027 | 7/10/2023 | 7/11/2023 | $69,000 |
| Stewart Homes, Inc., 5 Star Homes | 33028 | 7/10/2023 | 7/11/2023 | $67,000 |
| Stewart Homes, Inc., 5 Star Homes | 33029 | 7/10/2023 | 7/11/2023 | $65,000 |
| Stewart Homes, Inc., 5 Star Homes | 33030 | 7/10/2023 | 7/11/2023 | $65,000 |
| Stewart Homes, Inc., 5 Star Homes | 33031 | 7/10/2023 | 7/11/2023 | $67,000 |
| Stewart Homes, Inc., 5 Star Homes | 33036 | 7/10/2023 | 7/11/2023 | $73,000 |
| Stewart Homes, Inc., 5 Star Homes | 33037 | 7/10/2023 | 7/11/2023 | $72,000 |
| TOTAL | | | | $1,101,000 |

25.    From July 20 through July 26, 2023, the Stewart Checks were returned unpaid, and the provisional credits applied to the Capital Account were reversed. The reversal of the provisional credits resulted in a $1,407,126.03 negative balance

in the Capital Account as of July 31, 2023.  Attached to the Complaint as <u>Exhibit 3</u> is a true and correct copy of the monthly account statement for the Capital Account from July 2023, which reflects this negative balance.

26.    Despite Wells Fargo's demand, defendant Capital has failed and refused to repay the overdraft or otherwise restore the Capital Account to a positive balance. The negative balance within the Capital Account presently stands at $1,407,126.03.

27.    The check kiting scheme initiated by Stewart Homes and its CEO Michael Stewart, along with the transactions involving Capital and Tofolo, are illustrated in the diagram on the following page.

**THE REMINDER OF THIS PAGE IS INTENTIONALLY BLANK**



7/7/23-7/10/23: Stewart Homes writes 33 NSF checks totaling $2,633,000 to Capital (360) Inc. ("Stewart Checks")

7/20/23-7/26/23: Provisional credits are reversed creating a $1,407,126.03 negative balance in the Capital Account

7/11/23-7/17/23: Capital (360) deposits Stewart Checks into Wells Fargo account

7/11/23: David Tofolo deposits 16 checks from Stewart Homes totaling $1,101,000

7/12/23: Wells Fargo provisionally credits funds to Capital Account

7/20/23-7/26/23: Stewart Homes Checks returned unpaid

7/10/23-7/12/23: Capital (360) writes 17 checks to Stewart Homes. Checks are written against provisionally credited funds ("Cap 360 Checks")

7/11/23-7/12/23: Stewart Homes deposits Cap 360 Checks

## GENERAL ALLEGATIONS CONCERNING CAPITAL'S OPERATIONS AND TRANSFER OF ASSETS (INCLUDING FRAUDULENT CONVEYANCE OF REAL PROPERTY)

28.    As set forth above, defendant Capital has failed and refused to repay the overdraft or otherwise restore the Capital Account to a positive balance.  What follows is a summary of an asset that Capital held that was sufficient to repay its debt to Wells Fargo and the efforts by Frank Arlasky and Sandra Fern White to hide their assets to avoid repayment of this debt.

29.    Around August 2020, defendant White purchased a parcel of unimproved real property located at 2045 Eagle Drive, Lake Havasu, Arizona 86406. (the "Lake Havasu Property").  The Lake Havasu Property has an Assessor Parcel Number ("APN") of 109-17-050.  Attached to the Complaint as <u>Exhibit 4</u> is a true and correct copy of a Warranty Deed detailing this transaction.

30.    On February 18, 2021, Ms. White executed a Warranty Deed conveying title in the Lake Havasu Property to Capital for $10.00.  The Warranty Deed was recorded with the Mohave County Recorder's Office on August 9, 2021.  Attached to the Complaint as <u>Exhibit 5</u> is a true and correct copy of this recorded Warranty Deed.

31.    In August 2021, Capital obtained a $800,000.00 construction loan, which was secured by a senior deed of trust recorded against the Lake Havasu Property.  Attached to the Complaint as <u>Exhibit 6</u> is a true and correct copy of this deed of trust, recorded in Mohave County on August 9, 2021.

32.    During all periods relevant in this action, Capital operated as a thinly capitalized business that failed to observe corporate formalities pursuant to California law. This included, without limitation, commingling corporate assets with the assets of defendant Frank Arlasky and his wife, Sandra Fern White.  Arlasky and White frequently used the Capital Account at Wells Fargo to pay their personal expenses.  For example, the monthly statement from July 2023 for the Capital

Account reflects use of company funds to pay for Frank Arlasky's medical expenses and his discovery card payment. (Exhibit 3 at p. 2).  Furthermore, Capital operated out of the primary residence shared by Arlasky and White in Dana Point, California. Based on all these facts, there is a unity of interest and ownership such that the interests of Capital, Arlasky, and White are not separate and distinct. Arlasky and White are the alter egos of Capital.  As set forth below, it would be inequitable to allow Arlasky and White to escape liability for Capital's debt to Wells Fargo.

33.    In August 2023, Capital obtained a refinance on its construction loan, in the amount of $1,267,000.00 from lender 2045 Eagle, LLC.  This refinance loan was secured by a senior deed of trust recorded against the Lake Havasu Property. Attached to the Complaint as <u>Exhibit 7</u> is a true and correct copy of the deed of trust that was recorded with the Mohave County Recorder's Office on August 10, 2023.

34.    Due to the above-mentioned construction loans obtained by Capital, vast improvements were made to the Lake Havasu Property – primarily the construction of a luxury residence on the land.  By late 2023, the Lake Havasu Property was valued at approximately $3 million.

35.    Despite the commencement of this action against Capital in September 2023 and the continued negative balance in the Capital Account, Capital did not inform Wells Fargo that it owned real property.  Rather, Capital told Wells Fargo that it had no assets.

36.    On December 7, 2023, Frank Arlasky, as CEO of Capital, executed a Warranty Deed conveying title in the Lake Havasu Property to Sandra Fern White for $10.00.  The Warranty Deed was recorded with the Mohave County Recorder's Office on December 8, 2023.  Attached to the Complaint as <u>Exhibit 8</u> is a true and correct copy of this recorded Warranty Deed.  Wells Fargo contends that this transfer constituted a fraudulent conveyance made with the intent to defraud Capital's creditors.

37.    On or around December 20, 2023, Wells Fargo learned that the Lake

FIRST AMENDED COMPLAINT

{94000/HR2745/00742250-10 }

4888-7264-3996, V. 1

Havasu Property was being marketed for sale. On January 5, 2024, Wells Fargo learned that the Lake Havasu Property was in escrow. In response, Wells Fargo filed an ancillary action in the Superior Court of the State of Arizona (Mohave County) on January 9, 2024, with the objective of obtaining a writ of attachment against the Lake Havasu Property on an ex parte basis. (the "Arizona Action"). Attached hereto as Exhibit 9 is a true and correct copy of the conformed complaint (excluding the voluminous exhibits) filed in the Arizona Action.

38.    Concurrent with the filing of the Arizona Action, Wells Fargo filed an ex parte Application for Provisional Remedies against Capital, based on Wells Fargo's contract claim against Capital for no less than $1,407,126.03. On January 9, 2024, the Honorable Eric E. Gordon (Mohave Superior Court) granted Wells Fargo's Application, authorizing a writ of attachment against the Lake Havasu Property after Wells Fargo posted a bond. Attached hereto as Exhibit 10 is a true and correct copy of the order issued by Judge Gordon on January 9, 2024.

39.    The order obtained in the Arizona Action was obtained too late to secure a writ of attachment against the Lake Havasu Property. On or around January 8, 2024, the Lake Havasu Property sold for $2,800,000.00. Attached hereto as Exhibit 11 is the Deed of Release and Full Reconveyance that was recorded on January 8, 2024, releasing the senior encumbrance that was recorded against the Lake Havasu Property. The Lake Havasu Property was sold to an individual named Kathy L. Bodor.

40.    In conjunction with the sale of the Lake Havasu Property, Kathy Bodor executed a Deed of Trust with Assignment of Rents which was recorded on January 8, 2024, in favor of Sandra Fern White. Attached hereto as Exhibit 12 is a true and correct copy of this instrument.

41.    Upon information and belief, the sale proceeds from the Lake Havasu Property have been transferred to the personal bank accounts of Frank Arlasky and Sandra Fern White. The recent transfer of title in the Lake Havasu Property to Ms.

White and the movement of the sale proceeds to Arlasky and White's personal accounts constitute a clear attempt to avoid repayment to Wells Fargo on the $1,407,126.03 loss sustained as a result of the negative balance in the Capital Account.

**FIRST CLAIM FOR RELIEF – BREACH OF WRITTEN CONTRACT**

**(Against Defendants Capital, Frank Arlasky, and Sandra Fern White)**

42.    Plaintiff realleges and incorporates the preceding paragraphs by reference as though set forth in full herein.

43.    The Deposit Account Agreement (Exhibit 2) memorializes Wells Fargo's right to charge the Capital Account for unpaid items as well as Capital's obligation to repay Wells Fargo for overdrafts and for any account activity that results in a negative balance in the Capital Account.

44.    From July 11, 2023, through July 17, 2023, defendant Capital deposited the Stewart Checks into the Capital Account.

45.    Pursuant to the Deposit Account Agreement and Federal law (e.g., 12 C.F.R. Sec. 229.12), Wells Fargo provisionally credited the Capital Account with amounts equal to the Stewart Checks. The Deposit Account Agreement required Wells Fargo to provide provisional credits on the next business day after the deposit. (Exhibit 2 at p.7: "Availability of Funds Policy . . . Your ability to withdraw funds: **Our policy is to make funds from your check deposits to your checking or savings account [sic] available to you on the first business day after the day we receive your deposits.**") (bold in original).

46.    Between July 11, 2023, and July 12, 2023, defendant Capital paid Stewart Homes at least $1,462,000 from the provisionally credited funds.

47.    Between July 20, 2023, and July 26, 2023, the Stewart Checks were returned unpaid, and the provisional credits reversed.  The reversal of the provisional credits resulted in a $1,407,126.03 negative balance in the Capital Account on July 31, 2023.

48.     Despite Wells Fargo's repeated demands, defendant Capital failed and refused to repay the overdrafts or otherwise restore the Capital Account to a positive balance.  Presently, the Capital Account has a negative balance of $1,407,126.03.

49.     Wells Fargo performed each term and condition the Deposit Account Agreement required of it, except for those terms and conditions excused by defendant Capital's breach.

50.     Defendant Capital's failure to repay the overdrafts or restore the Capital Account to a positive balance breached the Deposit Account Agreement.

51.     Defendant Capital's breach caused Wells Fargo to sustain damages of not less than $1,407,126.03, plus interest at the highest rate allowed by law.

52.     The Deposit Account Agreement entitles Wells Fargo to recover its attorneys' fees and costs to prosecute this action. Wells Fargo therefore seeks the attorneys' fees and costs it incurs in this action.

53.     As alleged above, Capital has operated as a thinly capitalized business that routinely failed to observe corporate formalities pursuant to California law. This includes, without limitation, commingling corporate assets with the assets of Defendant Frank Arlasky and his wife, Defendant Sandra Fern White.  Capital engaged in fraudulent conveyances, such as the transfer of the Lake Havasu Property from Capital to White in December 2023. Moreover, Arlasky and White frequently used the Capital Account at Wells Fargo to pay their personal expenses.  Based on these facts, there is a unity of interest and ownership such that the interests of Capital, Arlasky and White are not separate and distinct. Arlasky and White are the alter egos of Capital and liable on the breach of contract claim.  To allow Arlasky and White to avoid the debt of Capital would result in a manifest injustice.

54.     To the extent that White is not an alter ego of Capital, she is still liable for her husband's debt under California's community property laws.  The unjust enrichment to Arlasky benefited the marital estate.

**SECOND CLAIM FOR RELIEF – RIGHT TO REFUND UNDER CALIFORNIA COMMERICIAL CODE § 4-214**

**(Against Defendants Capital, Frank Arlasky, and Sandra Fern White)**

55.     Wells Fargo realleges and incorporates by reference the preceding paragraphs as though set forth in full herein.

56.     Pursuant to California Commercial Code § 4-214, if "a collecting bank has made provisional settlement with its customer for an item and fails by reason of dishonor . . . the bank may revoke the settlement given by it, charge back the amount of any credit given for the item to its customer's account, or obtain refund from its customer . . ."

57.     Accordingly, Wells Fargo had the right under the Commercial Code to reverse the provisional credits for the Stewart Checks and it is entitled to obtain a refund from defendant Capital for the negative balance in the Capital Account.

58.     Wells Fargo is entitled to recover from defendant Capital damages of at least $1,407,126.03, plus expenses and interest at the highest rate permitted by law.

59.     Capital's liability under Commercial Code § 4-214 extends personally to Defendants Arlasky and White because they are the alter ego of Capital.  As alleged throughout the Complaint, Arlasky and White have treated Capital as their alter ego.  Allowing for Arlasky and White to avoid personal liability on Capital's debt would result in a manifest injustice.

60.     To the extent that White is not an alter ego of Capital, she is still liable for her husband's debt under California's community property laws.  The unjust enrichment to Arlasky benefited the marital estate.

**THIRD CLAIM FOR RELIEF – MONEY HAD AND RECEIVED**

**(Against Defendants Capital, Frank Arlasky, and Sandra Fern White)**

61.     Wells Fargo realleges and incorporates by reference the preceding paragraphs as though set forth fully herein.

62. Wells Fargo provisionally credited the Capital Account with the amount equal to the Stewart Checks.

63. Defendant Capital immediately drew on the provisionally credited funds, diverting at least $1,462,000.00 back to Stewart Homes.

64. Shortly thereafter, the Stewart Checks were returned unpaid because each check was backed by insufficient funds. Accordingly, Wells Fargo reversed the provisional credits in the Capital Account, resulting in a negative balance of $1,407,126.03 within the Capital Account.

65. Despite Wells Fargo's demand that Capital restore the Capital Account to a positive balance, defendant Capital has failed to repay Wells Fargo for its loss.

66. There is now due, owing, and unpaid to Wells Fargo the sum of not less than $1,407,126.03 plus interest at the highest rate permitted by law.

67. Capital's liability under this common count extends personally to Defendants Arlasky and White because they are the alter ego of Capital. As alleged throughout the Complaint, Arlasky and White have treated Capital as their alter ego. Capital operated as a thinly capitalized business, failed to observe corporate formalities, and commingled its corporate assets with the personal assets of Arlasky and White. Capital also engaged in fraudulent conveyances such as the transfer of the Lake Havasu Property to White.

68. Arlasky and White should be held jointly and severally liable on this common count for equitable reasons. As set forth above, the sale proceeds from the Lake Havasu Property have been transferred to the personal bank accounts of Arlasky and White. The recent transfer of title in the Lake Havasu Property to White and the movement of the sale proceeds to Arlasky and White's personal accounts constitute a clear attempt to avoid repayment to Wells Fargo on the $1,407,126.03 loss sustained as a result of the negative balance in the Capital Account. Defendants Arlasky and White have been unjustly enriched at Wells Fargo's expense and equity requires their repayment of the debt to Wells Fargo.

69.    To the extent that White is not an alter ego of Capital, she is still liable for her husband's debt under California's community property laws.

### FOURTH CLAIM FOR RELIEF—MONEY PAID

**(Against Defendants Capital, Frank Arlasky, and Sandra Fern White)**

70.    Wells Fargo realleges and incorporates by reference the preceding paragraphs as though set forth fully herein.

71.    Defendant Capital received $2,633,000.00 in provisionally credited funds following its deposit of the Stewart Checks in July 2023.

72.    Capital immediately withdrew the provisionally credited funds, diverting not less than $1,462,000.00 back to Stewart Homes.

73.    Shortly thereafter, the Stewart Checks were returned for insufficient funds and the provisional credits were reversed.  This resulted in an overdraft to the Capital Account. Despite Wells Fargo's demands, defendant Capital has failed to repay Wells Fargo for the $1,407,126.03 negative balance in the Capital Account.

74.     There is now due, owing, and unpaid to Wells Fargo the sum of not less than $1,407,126.03, plus interest at the highest rate permitted by law.

75.    Capital's liability under this common count extends personally to Defendants Arlasky and White because they are the alter ego of Capital. Allowing Capital's insiders to avoid personal liability on Capital's debt would result in a manifest injustice.

76.    To the extent that White is not an alter ego of Capital, she is still liable for her husband's debt under California's community property laws.  The unjust enrichment to Arlasky benefited the marital estate.

### FIFTH CLAIM FOR RELIEF – MONEY HAD AND RECEIVED

**(Against Defendants Stewart Homes and Amy Stewart, individually and as Trustee of Stewart Family Trust)**

77.    Wells Fargo realleges and incorporates by reference the preceding paragraphs as though set forth fully herein.

78.    Wells Fargo provisionally credited $2,633,000.00 to the Capital Account due to the deposit of the Stewart Checks.

79.    Defendant Capital immediately withdrew the provisionally credited funds, diverting not less than $1,462,000.00 back to the drawer of the Stewart Checks, Stewart Homes.

80.    After the Stewart Checks were returned unpaid, Wells Fargo sustained a loss of not less than $1,407,126.03 on the Capital Account.

81.    As a perpetrator of the check kiting scheme, Stewart Homes' principal Michael P. Stewart knew the Stewart Checks would be returned for insufficient funds. Equity demands that Stewart Homes is liable to Wells Fargo for its $1,407,126.03 loss, plus interest at the highest rate allowed by law.

82.    Defendant Amy S. Stewart is the successor trustee of the Stewart Family Trust and, on information and belief, the Stewart Family Trust is the sole shareholder of Stewart Homes. Because Stewart Homes failed to observe corporate formalities – including commingling corporate assets with assets of the Stewart Family Trust – the interests of Stewart Homes are not separate and distinct from those of the Stewart Family Trust. Therefore, the Stewart Family Trust is the alter ego of the Stewart Homes. To avoid unjust enrichment, equity demands that the Stewart Family Trust is jointly and severally liable for the $1,407,126.03 loss to Wells Fargo, along with interest at the highest rate allowed by law.

83.    Amy Stewart is also personally liable under California's community property laws for the actions of her husband, Michael P. Stewart. As a perpetrator of the check kiting scheme, Mr. Stewart knew the Stewart Checks would be returned for insufficient funds. As a naturally corollary, Mr. Stewart knew that the $1,462,000.00 received from Capital was drawn on provisionally credited funds that would be reversed when the Stewart Checks were dishonored. Mr. Stewart was the alter ego of Stewart Homes and at the time of his actions in July 2023, he incurred liability to Wells Fargo. Stewart's actions benefited the martial estate and therefore

1    justice demands that Ms. Stewart is jointly and severally liable for the $1,407,126.03

2    loss to Wells Fargo, along with interest at the highest rate allowed by law.

3              **SIXTH CLAIM FOR RELIEF—MONEY PAID**

4     **(Against Defendants Stewart Homes and Amy Stewart, individually and as**

5             **Trustee of Stewart Family Trust)**

6         84.     Wells Fargo realleges and incorporates by reference the preceding

7    paragraphs as though set forth fully herein.

8         85.     Wells Fargo provisionally credited $2,633,000.00 to the Capital

9    Account due to the deposit of the Stewart Checks.

10        86.     Defendant Capital immediately withdrew the provisionally credited

11    funds, diverting not less than $1,462,000.00 back to the drawer of the Stewart

12    Checks, Stewart Homes.

13        87.     After the Stewart Checks were returned unpaid, Wells Fargo sustained

14    a loss of not less than $1,407,126.03 on the Capital Account.

15        88.     As a perpetrator of the check kiting scheme, Stewart Homes' principal

16    Michael P. Stewart knew the Stewart Checks would be returned for insufficient

17    funds. Equity demands that Stewart Homes is liable to Wells Fargo for its

18    $1,407,126.03 loss, plus interest at the highest rate allowed by law.

19        89.     Defendant Amy S. Stewart is the successor trustee of the Stewart

20    Family Trust and, on information and belief, the Stewart Family Trust is the sole

21    shareholder of Stewart Homes. Because Stewart Homes failed to observe corporate

22    formalities – including commingling corporate assets with assets of the Stewart

23    Family Trust – the interests of Stewart Homes are not separate and distinct from

24    those of the Stewart Family Trust. Therefore, the Stewart Family Trust is the alter

25    ego of the Stewart Homes. To avoid unjust enrichment, equity demands that the

26    Stewart Family Trust is jointly and severally liable for the $1,407,126.03 loss to

27    Wells Fargo, along with interest at the highest rate allowed by law.

28        90.     Amy Stewart is also personally liable under California's community

{94000/HR2745/00742250-10 }
4888-7264-3996, V. 1

property laws for the actions of her husband, Michael P. Stewart.  As a perpetrator of the check kiting scheme, Mr. Stewart knew the Stewart Checks would be returned for insufficient funds. As a naturally corollary, Mr. Stewart knew that the $1,462,000.00 received from Capital 360 was drawn on provisionally credited funds that would be reversed when the Stewart Checks were dishonored. Mr. Stewart was the alter ego of Stewart Homes and at the time of his actions in July 2023, he incurred liability to Wells Fargo.  This misconduct benefited the martial estate and therefore justice demands that Ms. Stewart is jointly and severally liable for the $1,407,126.03 loss to Wells Fargo, along with interest at the highest rate allowed by law.

**SEVENTH CLAIM FOR RELIEF – CONVERSION**

**(Against Defendants Stewart Homes and Amy Stewart, as Trustee for the Stewart Family Trust)**

91.    Wells Fargo realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

92.    On information and belief, defendant Stewart Homes knew each of the Stewart Checks were drawn on insufficient funds and would be dishonored. Stewart Homes initiated the check kiting scheme by sending the Stewart Checks to Capital with the intent of receiving checks back that were drawn on the funds that Wells Fargo provisionally credited to the Capital Account.

93.    Before the Capital Checks were dishonored and returned unpaid, the Capital Account received provisional credits totaling $2,633,000.00 from Wells Fargo, pursuant to the Deposit Account Agreement and federal regulations.

94.    Capital was not entitled to use the provisionally credited funds because each of the Stewart Checks were backed by insufficient funds. When Capital wrote a series of checks in July 2023 -- totaling $1,462,000.00 and made payable to Stewart Homes -- Capital was using funds that belonged to Wells Fargo.

95.    Fully aware that the $1,462,000.00 it received from Capital 360 was drawn on provisionally credited funds that would be reversed when the Stewart

checks were returned, Stewart Homes converted the provisionally credited funds by accepting the transfers from the Capital Account.

96.    The conversion by Stewart Homes caused Wells Fargo to sustain damages of not less than $1,407,126.03 plus interest at the highest rate permitted by law.

97.    The actions by Stewart Homes were done with a conscious disregard for plaintiff's rights and with a specific intent to defraud and injure plaintiff, which constitutes fraud, oppression, and malice under California Civil Code section 3294. By virtue of this willful and wrongful conduct, Wells Fargo is therefore entitled to recover punitive damages in an amount sufficient to deter Stewart Homes from similar conduct in the future.

98.    Wells Fargo is also entitled to a constructive trust on funds and other assets held by Stewart Homes, the Stewart Family Trust and third parties that are traced to the Stewart Checks.

## EIGHTH CLAIM FOR RELIEF -- VIOLATION
## OF CALIFORNIA PENAL CODE § 496 (THEFT)
### (Against Defendant Stewart Homes)

99.    Wells Fargo realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

100.    California Penal Code § 496(a) imposes civil liability on a defendant who knowingly "receive(s) any property that has been stolen or that has been obtained in any manner constituting theft or extortion[.]" Pursuant to § 496(c), a party injured by a § 496(a) violation is entitled to treble damages, costs of suit, and reasonable attorneys' fees from the person(s) who committed the violation.

101.    On information and belief, defendant Stewart Homes knew the Stewart Checks were drawn on insufficient funds and would be dishonored.  Stewart Homes initiated the check kiting scheme by sending the Stewart Checks to Capital with the intent of receiving checks back from Capital that were drawn on the funds that Wells

1  Fargo provisionally credited to the Capital Account.

2      102.   Stewart Homes' acceptance of each check from Capital in July 2023
3  constituted a separate violation of California Penal Code § 496(a) because Stewart
4  Homes and Michael Stewart knew the funds received from Capital were stolen
5  property.

6      103.   These acts by Stewart Homes caused Wells Fargo to sustain damages
7  of not less than $1,407,126.03 plus interest at the highest rate permitted by law.

8      104.   Pursuant to California Penal Code § 496(c), Wells Fargo is entitled to
9  treble damages against Stewart Homes of not less than $4,221,378.09.

10     105.   Pursuant to California Penal Code § 496(c), Wells Fargo is entitled to
11 its attorneys' fees and costs.

12 ## NINTH CLAIM FOR RELIEF – UNFAIR BUSINESS PRACTICES
13 **(Against Defendants Stewart Homes and Amy Stewart, individually and as**
14 **trustee of the Stewart Family Trust)**

15     106.   Wells Fargo realleges and incorporates by reference the preceding
16 paragraphs as though fully set forth herein.

17     107.   Based on the foregoing allegations, Wells Fargo maintains that
18 defendant Stewart Homes engaged in unlawful, unfair, and/or fraudulent business
19 practices, in violation of Business & Professions Code section 17200, *et seq*.

20     108.   The Business & Professions Code applies to any business operating in
21 the State of California.  At all relevant times, Stewart Homes has operated in
22 California as a seller of manufactured homes. The misconduct alleged in this
23 Complaint is precisely the type of activity the Business & Professions Code seeks to
24 redress and prevent.

25     109.   Wells Fargo alleges that Stewart Homes engaged in the following
26 unfair business practices throughout July 2023, in violation of Section 17200, *et seq*.:
27 (i) knowingly writing the Stewart Checks to be deposited into a Wells Fargo deposit
28 account against insufficient funds; (ii) conspiring with Capital to accomplish the

check kiting scheme; and (iii) knowingly accepting checks from Capital drawn from the provisionally credited funds. Michael Stewart likewise engaged in unfair business practices as the alter ego of Stewart Homes.

110. As a direct result of these acts by Stewart Homes, Wells Fargo has suffered damages of no less than $1,407,126.03 due to the negative balance that was created in the Capital Account.

111. As a result of these unfair business acts, Stewart Homes, the Stewart Family Trust, and Amy Stewart have been unjustly enriched through the receipt of the provisionally credited funds from the Capital Account. Wells Fargo is therefore entitled to restitution for all sums received by Stewart Homes from Capital during July 2023.

112. Based on the unlawful, unfair, and/or fraudulent business practices of Stewart Homes, Wells Fargo is also entitled to equitable relief including without limitation the imposition of a constructive trust over the assets of Stewart Homes, the Stewart Family Trust, and Amy Stewart.

## <u>TENTH CLAIM FOR RELIEF – DECLARATORY RELIEF</u>
### **(Against Defendant David Tofolo)**

113. Wells Fargo realleges and incorporates by reference the preceding paragraphs as though set forth in full herein.

114. On information and belief, plaintiff alleges that defendant Tofolo is a key investor in Stewart Homes and was a close business associate of Michael P. Stewart. It is believed that Michael Stewart was an authorized third party on at least one deposit account held by Mr. Tofolo. Unlike many investors who were victims of the Ponzi scheme run by Stewart Homes and lost money, Mr. Tofolo made handsome profits from his investments in Stewart Homes over the years.

115. Defendant Tofolo holds a Wells Fargo deposit account ending in #.....7460 (the "Tofolo Account"), which he opened with the execution of a Consumer Account Application on December 21, 2000. (the "Tofolo Application").

A true and correct, but redacted, copy of the Tofolo Application is attached as Exhibit 13.

116. By executing the Tofolo Application, defendant Tofolo acknowledged receipt of, and agreed to be bound by, the terms and conditions of the applicable deposit account agreement when the account was opened, and by all modifications to that agreement. The Tofolo Account is presently governed by the Deposit Account Agreement effective November 15, 2022, a copy of which is attached as Exhibit 2.

117. Pursuant to the Deposit Account Agreement, defendant Tofolo agreed that Wells Fargo has the right to setoff funds in the Tofolo Account to satisfy a debt owed to Wells Fargo:

> **Our setoff rights**: If you owe us any money, we have the right to apply funds in any of your accounts to pay your debt. This is known as setoff. When we exercise this right, we reduce the funds in your account(s) by the amount of the debt that is due . . . . We're not required to give you any prior notice to exercise our right of setoff."

(Exh. 2 at p. 39, emphasis in original).

118. On July 11, 2023, defendant Tofolo deposited into the Tofolo Account not less than $1,101,000.00 of checks drawn by Stewart Homes on its Enterprise Bank & Trust account.   Not less than $632,125.71 remains on deposit in the Tofolo Account.

119. Plaintiff Wells Fargo contends that the funds residing in the Tofolo Account are, in full or in part, the product of the funds Wells Fargo provisionally credited to the Capital Account for the Stewart Checks.   In other words, the provisional credits that Wells Fargo extended to Capital infused the Stewart Homes deposit account at Enterprise Bank & Trust with sufficient funds so that the $1,101,000.00 in checks to Tofolo did not bounce.  Because Wells Fargo can trace the funds in the Tofolo Account to the provisional credits given to Capital, the funds

in the Tofolo Account are tainted.  Wells Fargo contends that it is entitled to a setoff of those funds to partially recover the funds it provisionally credited to the Capital Account.

120.   On information and belief, defendant Tofolo contends that Wells Fargo is not entitled to a setoff of the funds in the Tofolo Account.  Thus, an actual and present controversy exists between the parties.

121.   Wells Fargo therefore seeks a determination from the Court that it is entitled to a setoff of the remaining funds on deposit in the Tofolo Account.

## ELEVENTH CLAIM FOR RELIEF – FRAUDULENT TRANSFER UNDER THE UNIFORM VOIDABLE TRANSACTIONS ACT, CIVIL CODE SECTION 3439.04

### (Against Defendants Stewart Homes and David Tofolo)

122.   Wells Fargo realleges and incorporates by reference the preceding paragraphs as though set forth fully herein.

123.   Pursuant to Cal. Civil Code § 3439.04(a), a transfer of assets made by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer, if the debtor made the transfer (1) with an actual intent to hinder, delay, or defraud any creditor, or (2) without receiving reasonably equivalent value in return, and either (a) was engaged in or about to engage in a business or transaction for which the debtor's remaining assets were unreasonably small, or (b) intended to incur, or believes or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

124.   On July 11, 2023, defendant Tofolo deposited into the Tofolo Account not less than $1,101,000.00 of checks drawn by Stewart Homes on its Enterprise Bank & Trust account. This transaction is per se a fraudulent transfer under California law because it involved a Ponzi scheme.  As a matter of law, it was not a transfer for reasonably equivalent value.

125.   As a creditor of Stewart Homes, Wells Fargo is entitled claw back the

money from this fraudulent transfer.   Because a portion of the funds from this fraudulent transfer ($632,125.71) reside in the Tofolo Account, Wells Fargo is entitled to a judicial determination that it may exercise its setoff rights and keep these funds to partially satisfy its $1,407,126.03 loss.

**TWELFTH CLAIM FOR RELIEF – FRAUDULENT TRANSFER UNDER THE UNIFORM VOIDABLE TRANSACTIONS ACT, CIVIL CODE SECTION 3439.04**

**(Against Defendants Capital, Frank Arlasky, and Sandra Fern White)**

126.   Wells Fargo realleges and incorporates by reference the preceding paragraphs as though set forth fully herein.

127.   As detailed throughout this Complaint, the check kiting scheme resulted in a negative balance of $1,407,126.03 within the Capital Account. Despite Wells Fargo's continued demand that Capital restore the Capital Account to a positive balance, defendant Capital has failed to repay Wells Fargo for its loss.

128.   Over the past several months, Capital fraudulently conveyed title to the Lake Havasu Property, sold this property, and subsequently hid the sale proceeds to avoid repayment of Capital's debt under the Account Deposit Agreement. Between August 2021 and December 2023, Capital held title to the Lake Havasu Property, which had a fair market value of approximately $3 million. (Exhibits 5 - 8). Capital obtained construction loans which enabled Capital to build a luxury residence on this parcel of land. (Exhibits 6-7). On December 7, 2023, Frank Arlasky executed a Warranty Deed upon behalf of Capital, conveying title in the Lake Havasu Property to his wife (Defendant White) for $10.00. (Exhibit 8). This transfer constitutes a fraudulent conveyance.

129.   Pursuant to Cal. Civil Code § 3439.04(a), a transfer of assets made by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer, if the debtor made the transfer (1) with an actual intent to hinder, delay, or defraud any creditor, or (2) without receiving reasonably equivalent value

1   in return, and either (a) was engaged in or about to engage in a business or transaction

2   for which the debtor's remaining assets were unreasonably small, or (b) intended to

3   incur, or believes or reasonably should have believed that the debtor would incur,

4   debts beyond the debtor's ability to pay as they became due.

5       130.   On or around January 8, 2024, the Lake Havasu Property was sold.

6   Public records, including various real estate websites, reflect that the sale price was

7   $2,800,000.00.

8       131.   Upon information and belief, the sale proceeds from the Lake Havasu

9   Property have been transferred to the personal bank accounts of Arlasky and White.

10  The transfer of title to White and movement of the sale proceeds to Arlasky and

11  White's personal accounts constitute a clear attempt to hinder Wells Fargo's

12  collection of the $1,407,126.03 owed under the Account Deposit Agreement.

13      132.   Wells Fargo is entitled to equitable relief, including but not limited to,

14  a writ of attachment or garnishment against assets of Arlasky and White.   Wells

15  Fargo is also entitled to damages of no less than $1,407,126.03.

16                          **PRAYER FOR RELIEF**

17      WHEREFORE, Wells Fargo prays for relief as follows:

18  **ON THE FIRST CLAIM FOR RELIEF**

19      1.      For damages of not less than $1,407,126.03, plus interest at the

20  highest rate allowed by law.

21      2.      For attorneys' fees and costs.

22  **ON THE SECOND THROUGH SIXTH CLAIMS FOR RELIEF:**

23      3.      For damages of not less than $1,407,126.03, plus interest at the

24  highest rate allowed by law.

25  **ON THE SEVENTH CLAIM FOR RELIEF:**

26      4.      For damages of not less than $1,407,126.03 plus interest at the

27  highest rate allowed by law.

28      5.      For punitive damages.

6.        For the imposition of a constructive trust;

**ON THE EIGHTH CLAIM FOR RELIEF:**

7.        For damages of not less than $1,407,126.03 plus interest at the highest rate allowed by law.

8.        For treble damages of not less than $4,221,378.09.

9.        For attorneys' fees and costs.

**ON THE NINTH CLAIM FOR RELIEF:**

10.        For restitution of not less than $1,407,126.03.

11.        For equitable relief including the imposition of a constructive trust on the assets of Stewart Homes.

**ON THE TENTH CLAIM FOR RELIEF:**

12.        For a judicial determination that Wells Fargo is entitled to a setoff of the funds on deposit in the Tofolo Account.

**ON THE ELEVENTH CLAIM FOR RELIEF:**

13.        For all equitable relief that is available, including a judicial determination that Wells Fargo is entitled to a setoff of the funds on deposit in the Tofolo Account.

**ON THE TWELVTH CLAIM FOR RELIEF:**

14.        For all equitable relief that is available, along with damages of not less than $1,407,126.03, plus interest at the highest rate allowed by law.

**ON ALL CLAIMS FOR RELIEF:**

15.        For attorneys' fees and costs of suit.

16.        For such further relief that the Court deems just and proper.

Dated:  March 20, 2024                    LAGERLOF, LLP

                                          By: */s/ Mark T. Flewelling*
                                          Mark Flewelling
                                          Attorneys for Plaintiff
                                          WELLS FARGO BANK, N.A.