**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:23-cv-01800-DOC-ADSx            Date: June 12, 2024

Title: Wells Fargo Bank, N.A. v. Stewart Homes, Inc. et al

---

PRESENT:

**THE HONORABLE DAVID O. CARTER, JUDGE**

| Karlen Dubon | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFF: | ATTORNEYS PRESENT FOR DEFENDANT: |
|---|---|
| None Present | None Present |

---

**PROCEEDINGS (IN CHAMBERS):**    **ORDER DENYING TOFOLO'S MOTION TO DISMISS [56] AND DENYING CAPITAL 360'S MOTION TO DISMISS [52]**

Before the Court are David Tofolo's Motion to Dismiss[1] ("Tofolo Motion" or "Tof. Mot.") (dkt. 56) and Defendants Frank Arlasky, Capital 360, Inc., Sandra Fern White's Motion to Dismiss[2] ("Capital 360 Motion" or "Cap. Mot.") (dkt. 52) (collectively, the "Motions"). The Court finds these matters suitable for resolution without oral argument. *See* Fed R. Civ. P. 78(b); L.R. 7-15. For the reasons explained below, the Court DENIES the Motions.

---

[1] The Tofolo Motion is fully briefed. *See* Opposition to Motion to Dismiss Defendant David Tofolo ("Tof. Opp'n") (dkt. 67); Reply in Support of Tofolo's Motion to Dismiss ("Tof. Reply") (dkt. 73).
[2] The Capital 360 Motion is fully briefed. *See* Opposition to the Capital 360 Motion ("Cap. 360 Opp'n") (dkt. 59); Reply in Support of Capital 360's Motion to Dismiss ("Cap. 360 Reply") (dkt. 74).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:23-cv-01800-DOC-ADSx							Date: June 12, 2024

									Page 2

## I. Background

### A. Overview of Defendants' Alleged Check Kiting Scheme

Plaintiffs allege that, in July 2022, Defendants engaged in a "check kiting" scheme. *See generally* First Amended Complaint ("FAC") (dkt. 44). As the Supreme Court explained:

> "[A] check-kiting scheme typically works as follows: 'The check kiter opens an account at Bank A with a nominal deposit. He then writes a check on that account for a large sum, such as $50,000. The check kiter then opens an account at Bank B and deposits the $50,000 check from Bank A in that account. At the time of deposit, the check is not supported by sufficient funds in the account at Bank A. However, Bank B, unaware of this fact, gives the check kiter immediate credit on his account at Bank B. During the several-day period that the check on Bank A is being processed for collection from that bank, the check kiter writes a $50,000 check on his account at Bank B and deposits it into his account at Bank A. At the time of the deposit of that check, Bank A gives the check kiter immediate credit on his account there, and on the basis of that grant of credit pays the original $50,000 check when it is presented for collection.
>
> By repeating this scheme, or some variation of it, the check kiter can use the $50,000 credit originally given by Bank B as an interest-free loan for an extended period of time. In effect, the check kiter can take advantage of the several-day period required for the transmittal, processing, and payment of checks from accounts in different banks[.]"

*Williams v. United States*, 458 U.S. 279, 281 n.1 (1982) (internal quotations omitted).

Defendants' alleged scheme here worked in a way similar to the Supreme Court's hypothetical. The scheme began with Stewart Homes, Inc. writing 33 checks totaling over $2.6 million on its account at Enterprise Bank & Trust to Capital 360. FAC ¶ 20. Stewart Homes' account had less than $2.6 million in it. *See id.* ¶ 25. Capital then deposited the Stewart Checks into its Wells Fargo checking account. *Id.* ¶ 20. When Capital deposited the checks, Wells Fargo provisionally credited Capital's account amounts equal to the Stewart Checks. *Id.* ¶ 22. Capital then immediately wrote 17 checks

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:23-cv-01800-DOC-ADSxDate: June 12, 2024

Page 3

back to Stewart Homes, totaling $1.4 million. *Id.* ¶ 23. Stewart Homes then deposited those checks. After Stewart Homes deposited the checks, the originally Stewart Homes checks were returned unpaid, and Wells Fargo canceled the provisional credits it gave Capital. *Id.* ¶ 25. This reversal created a $1,407,126.03 negative balance in the Capital Account. *Id.*

In short, Stewart Homes and Capital used Wells Fargo's delay in collecting funds from Enterprise—the "float" time—to create an artificial balance in Capital's Wells Fargo account that was then transferred to Stewart Homes. By the time that Wells Fargo reversed the provisional credits because the original checks were unpayable, the money Wells Fargo credited was safely in Stewart Homes' account at Enterprise.

### B. Tofolo's Alleged Involvement

On the same day as he deposited the checks from Capital 360, Stewart Homes' CEO, Michael Stewart, also transferred $1.1-million to his close business associate, David Tofolo. *Id.* ¶ 27. Wells Fargo alleges that those checks did not bounce when Tofolo deposited them into his Wells Fargo account because Stewart Homes's account was infused with Wells Fargo's funds. Thus, Wells Fargo argues, the funds in Tofolo's account are attributable to the fraud. *Id.* ¶ 119.

When Wells Fargo discovered the fraud, it froze Tofolo's account. In this litigation, Wells Fargo seeks to apply Tofolo's account balance to offset its losses from the check kiting scheme. Wells Fargo identifies its authority to offset Tofolo's funds in the Deposit Account Agreement that Tofolo signed when opening his Wells Fargo account:

> **Our Setoff Rights**: If you owe us any money, we have the right to apply funds in any of your accounts to pay your debt. This is known as setoff. When we exercise this right, we reduce the funds in your account(s) by the amount of the debt that is due or past due as allowed by the laws governing your account.

*Id.* ¶ 117. In this case, Wells Fargo seeks a declaratory judgment that it is entitled setoff the remaining funds on deposit in Tofolo's account and seeks civil liability for fraudulent transfer. *Id.* ¶¶ 121-132.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:23-cv-01800-DOC-ADSx　　　　　　　　　　　　　　Date: June 12, 2024

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Page 4

## II.　　Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to set forth a set of facts that, if true, would entitle the complainant to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The pleadings must raise the right to relief beyond the speculative level; a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). On a motion to dismiss, this court accepts as true a plaintiff's well-pleaded factual allegations and construes all factual inferences in the light most favorable to the plaintiff. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). A court is not required to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

For claims sounding in fraud, a complaint must be dismissed when a plaintiff fails to meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009); see Fed. R. Civ. P. 9(b). Rule 9(b) requires a plaintiff alleging such claims to "state with particularity the circumstances constituting fraud." Id. The "circumstances" required by Rule 9(b) are the "who, what, when, where, and how" of the fraudulent activity. *United States ex rel Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011). Further, if the plaintiff claims a statement is false or misleading, "[t]he plaintiff must set forth what is false or misleading about a statement, and why it is false." *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *In re Glenfed, Inc. Secs. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994)). In other words, the plaintiff "must set forth an explanation as to why the statement or omission complained of was false or misleading." *Cooper v. Pickett*, 137 F.3d 616, 625 (9th Cir. 1997). This heightened pleading standard ensures that "allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). However, "intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b); *see Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993).

## III.　　Discussion

### A. Tofolo's Motion to Dismiss

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:23-cv-01800-DOC-ADSx                              Date: June 12, 2024

Page 5

Defendant Tofolo moves to dismiss Plaintiff's claims for declaratory relief and fraudulent transfer. Tofolo Mot. at 2. Wells Fargo's basis for those two claims is the same: Wells Fargo argues that it is entitled to the funds in Tofolo's account because they are the product of the check kiting scheme. Specifically, the provisional funds that Wells Fargo extended to Capital infused the Stewart Homes account, and these artificial funds were the only reason that the $1.1 million in checks from Stewart Homes to Tofolo did not bounce. In this respect, Tofolo's account balance are traceable to the fraudulent scheme.

### 1. Declaratory Relief Claim against Tofolo

Plaintiff seeks declaratory judgment that it has the right to setoff some of the funds in Tofolo's accounts under the Account Deposit Agreement. Tofolo makes two arguments in seeking to dismiss this cause of action. First, he argues that Wells Fargo does not have the contractual right to apply his funds to cover its losses for the check kiting scheme. Tofolo's Account Deposit Agreement only gives Wells Fargo authority to setoff funds if Tofolo owes Wells Fargo a debt. The Complaint, however, never alleges that Tofolo owes Wells Fargo any debt. Second, Tofolo argues that the Stewart Homes checks that he cashed cannot be the product of the check kiting scheme because those deposits predated Capital's checks at issue.

Wells Fargo responds that Tofolo's arguments pressing that Wells Fargo cannot use the setoff remedy illustrate the need for a declaratory judgment. The crux of a declaratory judgment claim, Wells Fargo argues, is that there is some "actual controversy" between the parties. Tof. Opp'n at 4 (quoting 28 U.S.C. § 2201(a)). That Tofolo disagrees that Wells Fargo cannot setoff his funds proves there is an "actual controversy" between the parties. The Court agrees with Wells Fargo.

The Declaratory Judgment Act gives district courts discretion to issue declaratory relief. *See* 28 U.S.C. § 2201; *Wilton v. Seven Falls Company*, 515 U.S. 277, 288–90 (1995). When a party requests a declaratory judgment, "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial , between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941). This standard is often satisfied where parties to a contract dispute their respective contractual rights. *See, e.g.*, *Societe de Conditionnement en*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:23-cv-01800-DOC-ADSx            Date: June 12, 2024

Page 6

*Aluminium v. Hunter Eng'g Co.*, 655 F.2d 938, 944 (9th Cir. 1981) (upholding declaratory judgment of patent rights where no litigation was pending); *Factory Sales & Eng'g, Inc. v. Nippon Paper Indus. USA Co.*, 2015 WL 4094447, at *4 (W.D. Wash. July 7, 2015) (denying motion to dismiss crossclaim seeking declaratory judgment of which parties are beneficiaries to a contract); *Realtek Semiconductor, Corp. v. LSI Corp.*, 2014 WL 2738226, at *4 (N.D. Cal. June 16, 2014) (finding that disputed royalty rate between parties to a contract presented an actual controversy appropriate for declaratory judgment).

Here, the parties dispute whether Wells Fargo has the right to setoff Tofolo's funds under the Deposit Account Agreement, a contract. Therefore, the Court may exercise its discretion to declare the rights and legal relations of the parties under Deposit Account Agreement, and Wells Fargo may properly seek declaratory relief on this issue.

### 2. Fraudulent Transfer Claim

Wells Fargo seeks to hold Tofolo liable for receiving fraudulently transferred funds in violation of the Uniform Voidable Transactions Act, Cal. Civ. Code § 3439.04. Under that law, a transferee is liable if the transferee receives a transfer from a debtor where the debtor made the transfer "[w]ith actual intent to hinder, delay, or defraud any creditor[.]" *Id.*

Wells Fargo has adequately alleged a fraudulent transfer claim. Wells Fargo alleges that it is a creditor for Stewart Homes as it has a claim against Stewart Homes for the check kiting scheme. *See id.* § 3439.01(c) (defining "creditor" as a "person that has a claim…of a debtor"). The timing and monetary value of the transfers from Stewart Homes to Tofolo also make it plausible that the transfers were done to frustrate Wells Fargo's ability to collect from Stewart Homes. The same day that Stewart Homes deposited the checks from Capital 360, Tofolo deposited $1.1 million worth of checks from Stewart Homes. The plain effect of Stewart Homes' transfers to a long-time business associate was to reduce Stewart Homes' assets. This reduction, in turn, protected the proceeds of the fraudulent scheme from any future judgment against Stewart Homes. Consequently, Wells Fargo has stated a fraudulent transfer claim.

Therefore, Tofolo's motion to dismiss the fraudulent transfer claim is denied.

### B. Capital 360's Motion to Dismiss

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:23-cv-01800-DOC-ADSx                              Date: June 12, 2024

Page 7

Defendants Frank Arlasky, Sandra Fern White, and Capital 360 moved to dismiss causes of action 1-4 and 12 of Plaintiff's First Amended Complaint. Cap. 360 Mot. at 2. They argued that those causes of action did not state a claim because Defendant did not comply with state and federal law when dishonoring the checks at the heart of this lawsuit. *Id.* In its Opposition, Plaintiff submitted evidence that showed that its dishonoring of the checks complied with the applicable statutes. *See* Cap. 360 Opp'n Ex. A. In response to this evidence, Defendants concede that "the case cannot be disposed of pursuant to FRCP 12(b)(6)." Cap. 360 Reply at 3; *see also id.* at 2 ("Capital realizes a motion pursuant to Rule 12(b)(6) will not be granted.").

Accordingly, the Court denies the Capital 360 Motion.

## IV.     Disposition

For the reasons explained above, the Court **DENIES** the Capital 360 Motion (dkt. 52) and the Tofolo Motion (dkt. 56).

The Clerk shall serve this minute order on the parties.

MINUTES FORM 11                                        Initials of Deputy Clerk: kdu

CIVIL-GEN