Mark T. Flewelling (Bar No. 96465)
  mflewelling@lagerlof.com
Michael Rapkine (Bar No. 222811)
  mrapkine@lagerlof.com
LAGERLOF, LLP
155 North Lake Avenue, 11th Floor
Pasadena, California 91101
Tel: 626-793-9400 | Fax: 626-793-5900

Attorneys for Plaintiff
WELLS FARGO BANK, N.A.
a national banking association

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| WELLS FARGO BANK, N.A., a national banking association,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>STEWART HOMES, INC., a California corporation, dba 5 Star Homes; CAPITAL (360), INC., a California corporation; DAVID M. TOFOLO, an individual; AMY S. STEWART, an individual; AMY S. STEWART, as trustee of the Stewart Family Trust Dated December 6, 2020; FRANK ARLASKY, an individual; SANDRA FERN WHITE, an individual; and DOES 1-10, inclusive,<br><br>　　　　　Defendants. | Case No.: 8:23-cv-01800-DOC (ADSx)<br><br>[The Hon. David O. Carter]<br><br>**NOTICE OF MOTION AND MOTION BY PLAINTIFF WELLS FARGO FOR ORDER:**<br>**(1) ENFORCING SETTLEMENT AGREEMENT; AND**<br>**(2) AWARDING SANCTIONS AGAINST DEFENDANTS FRANK ARLASKY, SANDRA WHITE, AND CAPITAL (360) INC.; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[*Filed with Declaration of Michael Rapkine and Proposed Order*]<br><br>Date:　　October 21, 2024<br>Time:　　8:30 a.m.<br>Crtm:　　10A (10th Floor) |

**TO DEFENDANTS AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on October 21, 2024 at 8:30 a.m. in Courtroom 10A of the Ronald Reagan Federal Building and United States Courthouse, located at 411 West Fourth Street, Santa Ana, CA, 92701, the Honorable David O. Carter presiding, plaintiff Wells Fargo Bank, N.A. ("Wells Fargo") shall move for an order enforcing the settlement agreement and for monetary sanctions against defendants Capital (360), Inc., Sandra Fern White, and Frank Arlasky. (the "Capital Defendants).

This motion is brought pursuant to the ample case law which holds that courts retain authority to enforce the terms of a settlement.  The Court also has the inherent authority to sanction the Capital Defendants for their failure to abide by the settlement terms and to compensate Wells Fargo for the fees incurred in bringing this motion.  As detailed in the motion, a binding settlement was reached following a Mandatory Settlement Conference ("MSC") on July 12, 2024.  On that same day, the settlement terms and conditions were read into this Court's record and all parties and their counsel assented to the settlement.  Since the date the settlement was consummated, the Capital Defendants have engaged in dilatory tactics in an apparent effort to avoid preforming the terms of the settlement.

Wells Fargo's motion is based on this notice, the attached memorandum of points and authorities, the supporting Declaration of Michael Rapkine ("Rapkine Decl.") with its attached exhibits, all other documents on file in this action, the arguments of its counsel, and on such other information the Court deems appropriate.

Pursuant to Local Rule 7-3, the undersigned counsel for Wells Fargo made attempts to participate in a telephonic meet/confer conference with attorney William J. Wall, Esq., counsel for the Capital Defendants. (e.g., Rapkine Decl. ¶¶ 10 & 19-20).

/ / /

1  On September 6, 2024, the undersigned counsel had a telephone
2  conversation with counsel for defendant David Tofolo, John Stephens, Esq.  When
3  told that Wells Fargo would be bringing a motion to enforce the settlement due to
4  the Capital Defendants' refusal to execute critical settlement documents, Mr.
5  Stephens noted that he had no objections to the motion.  Mr. Stephens likewise had
6  no objection to Wells Fargo's request for sanctions against the Capital Defendants.
7  On September 6, 2024, the undersigned also participated in a telephone
8  conference with Marc Forsythe, Esq., who represents defendants Stewart Homes,
9  Inc., Amy S. Stewart (individually), and Amy S. Stewart in her capacity as trustee
10 of the Stewart Family Trust Dated December 6, 2020.  Mr. Forsythe expressed the
11 same position as David Tofolo's counsel – he has no objections to Wells Fargo's
12 motion to enforce the settlement or to seek sanctions against the Capital
13 Defendants.

Respectfully submitted,

Dated:  September 10, 2024        LAGERLOF, LLP

By: */s/ Michael Rapkine*
    Michael Rapkine
    Attorneys for Plaintiff
    WELLS FARGO BANK, N.A.

# TABLE OF CONTENTS

Page

1. INTRODUCTION ................................................................................................7

2. SUMMARY OF EVENTS SINCE THE SETTLEMENT WAS REACHED ON JULY 12, 2024..................................................................9

3. ENFORCEMENT OF THE SETTLEMENT AGREEMENT IS NECESSARY SO THAT THE OBLIGATIONS OF THE CAPITAL DEFENDANTS ARE FULFILLED............................................................13

   A. A Court Order Facilitating The Execution of The Assignment and Allonge Is Required So That Wells Fargo Can Receive The $700,000.00 Due From Kathy L. Bodor............................................14

   B. A Court Order Is Likewise Needed To Compel The Capital Defendants To Remit The Settlement Payments To Wells Fargo......15

4. MONETARY SANCTIONS AGAINST THE CAPITAL DEFENDANTS AND THEIR COUNSEL ARE APPROPRIATE .............16

5. CONCLUSION .................................................................................................18

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Botefur v. City of Eagle Point, Or.*
  7 F.3d 152 (9th Cir. 1993)..................................................................................13

*Callie v. Near*
  829 F.2d 888 (9th Cir. 1987)........................................................................13, 14

*Chambers v. NASCO, Inc.*
  501 U.S. 32 ........................................................................................................16

*City Equities Anaheim, Ltd. v. Lincoln Plaza Dev. Co.*
  22 F.3d 954 (9th Cir. 1994)................................................................................13

*Facebook, Inc. v. Pac. Nw. Software, Inc.*
  640 F.3d 1034 (9th Cir. 2011)............................................................................13

*Fink v. Gomez*
  239 F.3d 989 (9th Cir. 2001)..............................................................................16

*Hobbs & Co. v. American Investors Management, Inc.*
  576 F.2d 29 ........................................................................................................16

*J&J Sports Prods. v. Chai*
  2010 WL 2991479 (E.D. Cal. July 28, 2010) ....................................................16

*Maynard v. City of San Jose*
  37 F.3d 1396 (9th Cir. 1994)..............................................................................13

*Roadway Express, Inc. v. Piper*
  447 U.S. 752 (1980)...........................................................................................16

*Schaffer v. Litton Loan Servicing, LP*
  2010 WL 9951762 (C.D. Cal. Oct. 18, 2010) ....................................................13

*TNT Marketing Inc. v. Agresti*
  796 F.2d 276 (9th Cir. 1986)........................................................................13, 16

**State Cases**

*Elite Show Servs., Inc. v. Staffpro, Inc.*
  119 Cal.App.4th 263 (2004)...............................................................................13

**Federal Statutes**

28 U.S.C. § 1927..................................................................................................17

# MEMORANDUM OF POINTS AND AUTHORITIES

## 1. INTRODUCTION

This case arose from a check kiting scheme that caused Wells Fargo to sustain a loss of $1,407,126.03, which represents the negative balance in the Wells checking account of defendant Capital (360), Inc. (FAC [Doc. 44], ¶¶ 1, 26, & 51).

On July 12, 2024, the parties and their counsel attended a Mandatory Settlement Conference before the Honorable Scott C. Clarkson. After hours of negotiations and with Judge Clarkson's considerable time and effort, the parties convened in the Honorable David O. Carter's courtroom and recited the full terms of the settlement into the record. (Rapkine Decl. ¶ 3; Exh. 1 [Transcript]).

Page 19 of the settlement transcript reflects the colloquy among the Court, defendants Frank Arlasky and Sandra White[1], along with their counsel William Wall. Mr. Arlasky and Ms. White assented to the settlement terms which had been recited on the record:

> THE COURT: Okay. So, Counsel, you can ask your client those two key questions, and then are these the material terms that will bind them, and is this agreement acceptable to them.
>
> MR. WALL: Do you understand these are the material terms that will bind you?
>
> MR. ARLASKY: Yes, I do.
>
> MS. WHITE: Yes.
>
> MR. WALL: Louder.
>
> MS. WHITE: Yes.
>
> MR. WALL: Did you get that, Madam Court Reporter?
>
> THE REPORTER: Yes, I did.

---

[1] Defendant Frank Arlasky is the owner, president, and CEO of Capital (360), Inc. (FAC ¶ 5). Sandra Fern White is Mr. Arlasky's wife and an insider of Capital (360), Inc. (FAC ¶¶ 6, 12 & 53-54).

         MR. WALL: Are they acceptable to you?

         MS. WHITE: Yes.

         MR. ARLASKY: Yes.

(Exh. 1 to Rapkine Decl. at 11:1-15).

     A material term of the settlement is defendant Sandra White's agreement to execute assignments to Wells Fargo of a deed of trust and the $700,000.00 promissory note that it secures. (Exh. 1 at 6:5-24). When the bank's counsel informed the Court that the assignment documents needed to be prepared, the Court accepted representations by the parties that the instruments would be executed and that this in no way prevented a binding settlement. (Exh. 1 at 7:3-4: "Okay. I'll accept the representation, though, that [they] will be executed so that we don't need to wait.").

     Another material term was the agreement by the Capital Defendants to release approximately $55,000.00 to Wells Fargo that was restrained in a Chase Bank deposit account held by Ms. White.[2] (Exh. 1 at 7:6-11).  The Capital Defendants agreed to "take all reasonable necessary steps, including joint instructions to Chase, to ensure that Chase remits the Chase Funds to Wells Fargo in expeditious fashion." (Exh. 1 at 7:11-15).

     Finally, the Capital Defendants agreed to remit a cashier's check for $105,000.00 to Wells Fargo within ten (10) calendar days after Chase released the $55,000.00. (Exh. 1 at 7:20 – 8:3).

     As detailed below, the Capital Defendants and their counsel have not made the slightest effort to fulfill the terms agreed to on July 12.  Due to a vacation that Mr. Wall took for the rest of July, counsel for Wells Fargo waited until July 29 to send him the assignment instruments. Six weeks later, the assignment documents

---

[2]   The funds in Sandra White's deposit accounts were restrained pursuant to a writ of attachment obtained by Wells Fargo. (Doc. 70).

remain unsigned, and it does not appear that the Capital Defendants have even reviewed the documents. (e.g., Rapkine Decl. ¶¶ 10 & 18).

Furthermore, Mr. Wall's concessions about "client control problems" and the need to "motivate" his clients give Wells Fargo and its counsel a well-founded concern that the Capital Defendants do not intend to honor the settlement. (e.g., Rapkine Decl. ¶¶ 12 & 16; see also, Exh. 4 to Rapkine Decl.)

For the reasons briefed in this motion, Wells Fargo requests an order expediting the execution of the assignment instruments and mandating the release of $55,000 in the Chase account as well as the delivery of another $105,000 to Wells Fargo's counsel. Wells Fargo also seeks monetary sanctions against the Capital Defendants for the fees incurred to bring this enforcement motion.

## 2. SUMMARY OF EVENTS SINCE THE SETTLEMENT WAS REACHED ON JULY 12, 2024

As noted, the parties recited the full terms of the global settlement onto the record on July 12, 2024. (Rapkine Decl. ¶ 3; Exh. 1 [Transcript]). After reciting the terms and conditions, each party and their attorneys assented to a binding settlement. (Exh. 1 at 14:15 – 20:13). The Court then issued an order that it retains jurisdiction for one year "to reopen the action upon showing of good cause that the settlement has not been consummated." (Doc. 91).

Although a binding settlement has already been reached, the subsequent execution of documents is necessary to effectuate a critical settlement term. (Rapkine Decl. ¶ 5). The Capital Defendants agreed that Sandra White shall assign to Wells Fargo a Deed of Trust executed by Kathy L. Bodor ("Bodor Deed of Trust") along with the corresponding promissory note signed by Ms. Bodor ("Bodor Note") (Exh. 1 at 6:5 – 7:4). Pursuant to the Bodor Note, $700,000.00 is presently due and payable to Sandra White. (Rapkine Decl. ¶ 5). Per the settlement, this amount will be paid to Wells Fargo. *Id*.

The other consideration the Capital Defendants agreed to provide in exchange for dismissal of Wells Fargo's claims was twofold: (1) payment of approximately $55,000.00 to Wells Fargo from the restrained Chase deposit accounts of Sandra White (Exh. 1 at 7:6-15); *and* (2) payment of a cashier's check for $105,000.00 to Wells Fargo. (Exh. 1 at 7:20 – 8:3). Neither the Capital Defendants nor their counsel have taken any steps to facilitate the assignment of the Bodor instruments or to pay the $160,000.00 that is due under the settlement. (Rapkine Decl. ¶ 6).

Shortly after the MSC, counsel for the Capital Defendants (William Wall) informed the parties that he would be on vacation through July 29, 2024. (Rapkine Decl. ¶ 7). The parties took this date into consideration with the goal of executing all necessary settlement papers by the first week of August 2024. *Id*.

On July 28, 2024, the undersigned attorney for Wells Fargo emailed a draft of the settlement papers to counsel for the defendants. (Rapkine Decl. ¶ 8). The attorneys for David Tofolo, Stewart Homes, and Amy Stewart proposed minor revisions which were immediately incorporated into the settlement papers. *Id*.

On July 31, 2024, the revised settlement papers were emailed to counsel for the defendants. (Rapkine Decl. ¶ 9; Exh. 2 [Email]). Mr. Wall acknowledged receipt and commented: "So we have comments from everyone but me?" (Exh. 2 at p.1). Wells Fargo's counsel responded that Mr. Wall was correct and that he should review the settlement papers and provide redlined edits if necessary. *Id*.

Unfortunately, the parties are still waiting for comments from Mr. Wall. (Rapkine Decl. ¶ 10).

Critical for the purpose of this motion is an Assignment of the Bodor Deed of Trust ("Assignment") and an Allonge to the Bodor Note ("Allonge"), both of which need to be signed by Sandra White. (Rapkine Decl. ¶ 11). The Assignment must be executed in the presence of a licensed notary. Attached to the Rapkine Declaration as Exhibit 3 is a true and correct copy of the Assignment and Allonge.

1  During the first week of August, several reminders were sent to Mr. Wall. (Rapkine Decl. ¶ 12).  On August 7, an email was sent requesting Mr. Wall's review of the papers with the goal of "get[ting] the settlement agreement executed by early next week." (Exh. 4 to Rapkine Decl.)  Counsel for David Tofolo (John Stephens, Esq.) reiterated the request for Mr. Wall to review the papers on an expedited basis. (Exh. 4 at p.4: "I'm getting some pressure from David T to wrap this up.").  Mr. Wall responded: "I'm sure it's pressure you can both withstand." (Exh. 4 at p.3).  On August 13, Mr. Wall remarked that he would try to "motivate" his clients to move the process along. *Id*.

On August 14, 2024, the undersigned attorney sent an email to Mr. Wall stressing: "If a settlement isn't executed within the next week or so, Wells Fargo wants me to prepare a motion to compel the Capital Defendants to sign the settlement papers." (Exh. 4 at p.1).  Attorney John Stephens commented: "I would have no opposition to that motion, but I sincerely hope it will not be necessary." *Id*. Mr. Stephens reiterated his desire that William Wall circulate comments on the settlement papers. (Exh. 4 at p.1: "Bill, please do what you can to expedite the execution of the agreement.").

In anticipation of the potential need to bring this motion, Wells Fargo ordered the settlement transcript on August 21, 2024. (Rapkine Decl. ¶ 14). Counsel for Wells Fargo also sent the following email to Mr. Wall: "When I receive the transcript, Wells Fargo has instructed me to start preparing a motion to compel execution of the settlement papers, coupled with a sanctions request against the Capital Defendants." (Exh. 5 at p.1).  The email added that if Mr. Wall could circulate his "edits to the settlement papers by the beginning of next week, I won't have to go the route of a sanctions motion." *Id*.

On August 29, 2024, Wells Fargo received a copy of the settlement transcript and circulated a copy by email to all the parties. (Rapkine Decl. ¶ 15).

Later that day, counsel for Wells Fargo (Michael Rapkine) had a telephone conversation with Mr. Wall, again reiterating the need for his comments to the settlement papers. (Rapkine Decl. ¶ 16). During the call, Mr. Wall noted that he was having "client control problems" and that his clients were responsible for the delay. *Id*. That said, Mr. Wall promised that he would email his comments by September 2, 2024. *Id*. Mr. Wall added that he would be departing for a two-week vacation in Hawaii on September 4, yet he stated that he would be working during the vacation. *Id*. Mr. Rapkine construed Bill Wall's statement as a stance that the settlement papers would be executed during this Hawaiian vacation. *Id*.

Shortly after the telephone call on August 29, counsel for Wells Fargo sent a confirmation email to Mr. Wall that stated: "I look forward to your edits . . . by Monday [9/2]." (Exh. 6 to Rapkine Decl.)

Mr. Wall did not provide his edits or comments as promised. (Rapkine Decl. ¶ 18). On September 3, an email was sent to Mr. Wall inquiring about the status of his edits. (Exh. 7 to Rapkine Decl.) Mr. Wall responded that Michael Rapkine was "mistaken" regarding a deadline and added that he "will try to get this done sooner rather than later." (Exh. 7 at p.2).

Wells Fargo's counsel followed up with Mr. Wall via email, requesting a meet and confer telephone call to discuss an anticipated motion to enforce the settlement. (Rapkine Decl. ¶ 19; Exh. 7 at p.1). Mr. Wall responded that he would not participate in a call while on vacation. (Exh. 7 at p.1: "No, I'm not available for over a week . . . . With the above in mind, I am expressly not waiving the meeting of counsel requirement to bring a motion. The soonest I can be available is 9/16.").

To date, the parties have not received any substantive comments from Mr. Wall concerning the settlement papers, let alone an estimate on when his clients intend to sign the papers. (Rapkine Decl. ¶ 20). Based on Mr. Wall's continued failure to review the settlement papers and his comments concerning client control

problems, Wells Fargo seriously questions whether the Capital Defendants have any intention of signing the settlement papers unless pressured by the Court.

### 3. ENFORCEMENT OF THE SETTLEMENT AGREEMENT IS NECESSARY SO THAT THE OBLIGATIONS OF THE CAPITAL DEFENDANTS ARE FULFILLED

It is "well settled that a district court has the equitable power to enforce summarily an agreement to settle a case pending before it." *Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987) (citations omitted); see also, *City Equities Anaheim, Ltd. v. Lincoln Plaza Dev. Co.*, 22 F.3d 954, 957 (9th Cir. 1994) (describing court's power to summarily enforce the performance of a consummated settlement); *TNT Marketing Inc. v. Agresti*, 796 F.2d 276, 278 (9th Cir. 1986) (same).

Enforcement of a settlement agreement is appropriate without an evidentiary hearing where "material facts concerning the existence or terms of the agreement" are undisputed. *Schaffer v. Litton Loan Servicing, LP*, 2010 WL 9951762, *6 (C.D. Cal. Oct. 18, 2010). "The interpretation of a settlement agreement is governed by principles of state contract law." *Botefur v. City of Eagle Point, Or.*, 7 F.3d 152, 156 (9th Cir. 1993). "[T]he district court may enforce only complete settlement agreements." *Callie, supra*, 829 F.2d at 890; see also, *Maynard v. City of San Jose*, 37 F.3d 1396, 1401 (9th Cir. 1994) (same).

To form an enforceable agreement, the parties must intend to be bound and agree on the material terms. *Callie, supra*, 829 F.2d at 890-91. "Under California law, a contract is enforceable if it is sufficiently definite that a court can ascertain the parties' obligations thereunder and determine whether those obligations have been performed or breached." *Elite Show Servs., Inc. v. Staffpro, Inc.*, 119 Cal.App.4th 263, 268 (2004). A term is "material" if it is a term without which there can be no contract, or if it is a term that "affects the value of the bargain." *Facebook, Inc. v. Pac. Nw. Software, Inc.*, 640 F.3d 1034, 1037 (9th Cir. 2011).

///

A. **A Court Order Facilitating The Execution of The Assignment and Allonge Is Required So That Wells Fargo Can Receive The $700,000.00 Due From Kathy L. Bodor**

As stressed above, Mr. Wall has not even provided an estimate regarding when his clients intend to execute the settlement papers. (e.g., Rapkine Decl. ¶¶ 10 & 18; Exh. 7). Given that Mr. Wall was provided a final version of the settlement papers on July 31, 2024, his delay is patently unreasonable.

A crucial component of the settlement is the agreement by the Capital Defendants that the $700,000 presently due from Kathy Bodor to Sandra White will be assigned to Wells Fargo. (Exh. 1 at 6:5 – 7:4). It is incontrovertible from the statements on the record that the Capital Defendants agreed to be bound to this material settlement term. *Callie, supra*, 829 F.2d at 890-91.

Attached as Exhibit 3 to the Rapkine Declaration is a compilation of the assignment instruments -- the Assignment and Allonge. These instruments are a combined total of 3 pages and contain rather standard assignment language.

The assignment of the Bodor Deed of Trust will not be effective until an executed/notarized Assignment is recorded with the Mohave County Recorder's Office in Arizona. After all, Kathy Bodor rightfully expects a recorded instrument before she pays $700,000 to Wells Fargo. If there is no recorded Assignment, there is a possibility that Sandra White in bad faith could make a demand that Ms. Bodor make another payment of $700,000, this time to White. Furthermore, once Wells Fargo receives the payment from Kathy Bodor, the bank shall record a reconveyance to memorialize that the Bodor Note has been paid off. Without a recorded Assignment, the chain of title within the public record will appear suspect and it could appear to future purchasers of the subject property that there was a "wild" reconveyance by Wells Fargo.

In light of the foregoing, Wells Fargo respectfully respects that the Court direct the clerk to execute the Assignment and Allonge on Sandra White's behalf.

In the alternative, Wells Fargo requests an order directing Sandra White to execute the Assignment and Allonge within five days and that if she fails to comply, the clerk of this Court is empowered to do so on her behalf. These alternatives are set forth in the proposed order that accompanies this motion.

**B.     A Court Order Is Likewise Needed To Compel The Capital Defendants To Remit The Settlement Payments To Wells Fargo**

The other consideration provided by the Capital Defendants in exchange for dismissal of Wells Fargo's claims is: (1) payment of approximately $55,000.00 to Wells Fargo from the restrained Chase deposit accounts of Sandra White (Exh. 1 at 7:6-15); *and* (2) payment of a cashier's check for $105,000.00 to Wells Fargo. (Exh. 1 at 7:20 – 8:3). Like the execution of the Assignment and Allonge, Wells Fargo does not believe the Capital Defendants will pay the money without pressure from the Court. (Rapkine Decl. ¶¶ 6, 16 & 18).

With respect to the amount currently restrained in Sandra White's deposit accounts at JPMorgan Chase,[3] it was agreed that "[t]he Capital defendants shall take all reasonable necessary steps, including joint instructions to Chase, to ensure that Chase remits the Chase Funds to Wells Fargo in expeditious fashion." (Exh. 1 at 7:11-15). Wells Fargo requests an order from the Court mandating that within ten (10) days, the Capital Defendants must sign joint instructions that will be prepared by counsel for Wells Fargo. Furthermore, Wells Fargo will have the benefit of the language in the Court's order, which it can deliver to Chase for release of the funds to Wells Fargo.

Finally, there remains the obligation of the Capital Defendant to remit a cashier's check for $105,000 made payable to "Wells Fargo Bank, N.A." (Exh. 1 at 7:20 – 8:3). While the parties agreed on July 12 that this cashier's check was due ten (10) calendar days after Wells Fargo received the $55,000 from Chase, both

---

[3] The Chase deposit accounts of Sandra White that are restrained are as follows: Account Nos. XXXXX6326; XXXXX7431; XXXXX6583; and XXXXX7522.

sums of money should be considered overdue at this point. Thus, Wells Fargo respectfully requests that the Court's order include directions that the Capital Defendants must remit the $105,000 cashier's check to Wells Fargo's counsel within ten (10) calendar days, regardless of the status of the funds from Chase.

### 4. MONETARY SANCTIONS AGAINST THE CAPITAL DEFENDANTS AND THEIR COUNSEL ARE APPROPRIATE

The Court's power to enforce a settlement includes the "authority to award damages for failure to comply with the settlement agreement and to entitle the non-breaching party to specific performance." *J&J Sports Prods. v. Chai*, 2010 WL 2991479, *1 (E.D. Cal. July 28, 2010); see also, *TNT Marketing, Inc., supra*, 796 F.2d at 278 (a district court's inherent power includes "authority to award damages for failure to comply with the settlement agreement[.]"), citing *Hobbs & Co. v. American Investors Management, Inc.*, 576 F.2d 29, 33 & n. 7 (3d Cir.1978).

Closely related to the above case law, federal courts have the inherent power to impose sanctions to control their proceedings, prevent abuse of the judicial process, and ensure compliance with their orders. *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764-65 (1980); see also, *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (this inherent sanction power extends to a full range of litigation abuses, including engaging in bad faith or disregarding a court order); *Fink v. Gomez*, 239 F.3d 989, 991-92 (9th Cir. 2001) (same). The Supreme Court has added that in certain circumstances, courts may assess sanctions against counsel who abuse the judicial process. *Roadway Express, Inc., supra*, 447 U.S. at 765.

Here, sanctions are appropriate. The Court has inherent power to award sanctions based on the Capital Defendants' obvious unwillingness to take the steps necessary to fulfill the settlement terms. *TNT Marketing, Inc, supra*, 796 F.2d at 278. Comments by Mr. Wall such as he needs to "motivate" his clients and that he has "client control problems" betray the reluctance of White and Arlasky to cooperate in honoring the settlement. (Rapkine Decl. ¶¶ 12 & 16; Exh. 4 at p.3).

Sanctions are also available against counsel for the Capital Defendants under 28 U.S.C. § 1927. Under this statute, any attorney who "multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Mr. Wall has not even indicated that he has looked at the settlement papers despite having received the revised versions on July 31, 2024. (Rapkine Decl. ¶ 10). As recent as September 3, 2024, Mr. Wall nonchalantly commented that he "will try to get this done sooner rather than later." (Exh. 7 to Rapkine Decl. at p.2). When told that Wells Fargo and David Tofolo were extremely eager to complete the settlement, Mr. Wall responded that: "I'm sure it's pressure you can both withstand." (Exh. 4 at p.3).

While Mr. Wall can partially blame his clients for dragging the settlement process along, he has contributed to the standstill. At a minimum, Mr. Wall should have reviewed the settlement papers shortly after July 31 and advised Wells Fargo that: (i) revisions were desired based on his professional expertise; or (ii) that the papers were acceptable. Assuming the settlement papers are acceptable to Mr. Wall, he should have advised his clients to sign them and promptly relayed this development to the parties.

Wells Fargo therefore requests an amount equal to the attorneys' fees it has incurred to prepare this motion, the accompanying declaration, the supporting exhibits, and the proposed order. Depending on whether this motion is opposed and whether a hearing is required, Wells Fargo's fee request is between $5,200 and $6,488. (Rapkine Decl. ¶ 24). The time spent on the moving papers and the hourly rates of the counsel are set forth in the accompanying declaration. (Rapkine Decl. ¶¶ 21-23).[4]

---

[4] In the interest of reasonableness, Wells Fargo is only seeking to recoup its fees related to this enforcement motion. Wells Fargo is not seeking to recoup the fees it has unnecessarily incurred stemming from frequent reminders to Mr. Wall over the past six weeks, urging him to review the settlement papers.

## 5. CONCLUSION

Based on the above facts and analysis, Wells Fargo requests that the Court (i) direct the clerk to execute the Assignment and Allonge on Sandra White's behalf, *or* (ii) alternatively, order that Sandra White must execute the Assignment and Allonge within five (5) days. This motion also requests an order mandating that within ten (10) days, the Capital Defendants must remit all settlement payments to opposing counsel. Finally, Wells Fargo seeks a sanctions award to compensate the bank for the legal fees incurred to bring this motion.

Respectfully submitted,

Dated: September 10, 2024         LAGERLOF, LLP

By: */s/ Michael Rapkine*
    Michael Rapkine
Attorneys for Plaintiff
WELLS FARGO BANK, N.A.

# CERTIFICATE OF SERVICE

STATE OF CALIFORNIA      )
                         ) ss.
COUNTY OF LOS ANGELES    )

I am employed in the County of Los Angeles, State of California. I am over the age of 18 years and not a party to the within action. My business address is 155 North Lake Avenue, 11th Floor, Pasadena, California 91101.

On the date below, I served the foregoing document(s) described as:

**NOTICE OF MOTION AND MOTION BY PLAINTIFF WELLS FARGO FOR ORDER: (1) ENFORCING SETTLEMENT AGREEMENT; AND (2) AWARDING SANCTIONS AGAINST DEFENDANTS FRANK ARLASKY, SANDRA WHITE, AND CAPITAL (360) INC.; MEMORANDUM OF POINTS AND AUTHORITIES**

on the interested parties in this case as follows:

*Courtesy Copy via U.S. Mail*
to
The Hon. Scott Clarkson
c/o Taylor Brown Duncan, Esq.
Ronald Reagan Federal Building and United States Courthouse
411 W. Fourth St., 5th Floor
Santa Ana, CA 92701
Email: Taylor_BrownDuncan@cacb.uscourts.gov

**Served Electronically via the Court's CM/ECF System:**

| *Defendants Capital (360), Inc., Frank Arlasky and Sandra Fern White* | *Defendant, David M. Tofolo* |
|---|---|
| William J. Wall, Esq.<br>26895 Aliso Creek Road, #B-110<br>Aliso Viejo, CA 92656<br>Tel: (949) 387-4300<br>Email: wwall@wall-law.com | John Stephens, Esq.<br>FERGUSON BRASWELL<br>FRASER KUBASTA PC<br>575 Anton Blvd., Suite 750<br>Costa Mesa, CA 92626<br>Tel: (949) 468-3200<br>Fax: (949) 468-3201<br>jstephens@fbfk.law |

1  *Defendants Stewart Homes, Inc., Amy Stewart, an individual, and Amy S. Stewart, trustee of the Stewart Trust*

Marc C Forsythe, Esq.
GOE FORSYTHE AND HODGES LLP
18101 Von Karman Avenue
Suite 1200
Irvine, CA  92612
Tel:  949-798-2460
Fax: 949-955-9437
Email: mforsythe@goeforlaw.com

    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  I declare that I am employed in the office of a member of the Bar of this Court, at whose direction the service was made.  This declaration is executed in Pasadena, California on **September 11, 2024.**

| Marianne Mantoen | /s/ Marianne Mantoen |
|---|---|
| (Type or Print Name) | (Signature of Declarant) |